

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
MAR 31 2017
ARTHUR JOHNSTON
BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

| | |
|---|---|
| PATRICK DUNN and HOPE ELLY,<br><br>    **Plaintiffs,**<br><br>v.<br><br>NEW PALACE CASINO, LLC<br><br>    **Defendant.** | **CIVIL ACTION NO.**<br><br>1:17cv92 LG-RHW |

## COMPLAINT

### I.   INTRODUCTION

Plaintiffs, Patrick Dunn, and Hope Elly, file this Title III, ADA action, pursuant to 42 U.S.C. § 12181, et. seq. In Count One of the Complaint, Plaintiffs seek to enjoin the Defendant to remove architectural barriers. In Count Two, Plaintiffs·seek to enjoin Defendant to maintain practices, policies, and procedures necessary to maintain the premises free of architectural barriers both now and once the barriers are removed. In Count Three, Plaintiffs seek to enjoin the Defendant's use of the premises to provide full and equal enjoyment of the premises to the disabled. Counts Two and Three seek independent relief in addition to the removal of architectural barriers. In Count Four, Plaintiffs seek to enjoin Defendant to remediate its website that fails to show the

accessible features of Palace Casino Resort. In Count Five, Plaintiffs seek to enjoin Defendant's use of the reservation system in a manner that screens out the disabled from being able to make reservations for a hotel room with accessible features for the disabled.

## II.   JURISDICTION, PARTIES, AND ARTICLE III STANDING

1.   Because this is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, et. seq., (hereinafter referred to as the "ADA") and its implementing regulations, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2.   Venue is proper in this Court, the United States District Court for the Southern District of Mississippi, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Southern District of Mississippi.

3.   Plaintiff, Patrick Dunn, resides in Andalusia, Alabama. On March 8, 2001, Mr. Dunn was in an automobile accident that caused permanent damage to his C-7 vertebra in his spinal cord. As a result, he became paralyzed, which has permanently confined him to a

wheelchair and restricted his ability to use his hands, arms, and legs. Mr. Dunn is, accordingly, disabled pursuant to the Americans with Disabilities Act, in that he suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; *See also,* 28 C.F.R. § 36.104.

4.   Plaintiff, Hope Elly, suffers from cerebrovascular accidents, which are more commonly known as strokes. These strokes have effected both her motor and sensory functions, which causes inactivity and/or paralysis of the muscles; therefore, maintaining balance, walking, and the ability to use her hands are extremely difficult. As a result of her disability, she relies on mobility aids for locomotion. The extent of Ms. Elly's physical problems limits her ability to care for herself, perform manual tasks, walk, stand, lift, bend, grab, twist, and work, all of which are major life activities pursuant to 42 U.S.C. § 12102 (2) (A). Ms. Elly is, accordingly, disabled pursuant to the Americans with Disabilities Act, in that she suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; *See also,* 28 C.F.R. § 36.104.

5.  Defendant, New Palace Casino, LLC, (hereinafter "New Palace Casino" or "Palace Casino Resort") is a Limited Liability Company that is both registered to do business and is conducting business within the State of Mississippi sufficient to create both general and specific in personam jurisdiction. Upon information and belief from the property records on the Harrison County GIS Internet Report, New Palace Casino, "owns" the real property and improvements with a parcel number 1510L-01-102.000 located at 158 Howard Avenue[1], Biloxi, Mississippi 39530. 42 U.S.C. § 12182. Upon further information and belief, New Palace Casino, LLC, "operates" the establishment located at 158 Howard Avenue, Biloxi, Mississippi 39530, more commonly known as Palace Casino Resort. Palace Casino Resort is a commercial facility in that the units are intended for nonresidential use and affect commerce. 42 U.S.C. § 12181 (2)(A). Moreover, the establishment offers restaurants, a hotel, casino games, shopping, and other entertainment to the public, which

---

[1] According to palacecasinoresort.com the address is 158 Howard Ave, Biloxi, Mississippi 39530; however, the Harrison County Tax Assessor personal property records lists Palace Casino Resort's address as 104 Howard Ave, Biloxi, MS 39530, and the real property records lists two addresses: 160 Howard Ave, Biloxi, MS 39530, and 164 Howard Ave, Biloxi, MS 39530 as Palace Casino Resort's address.

qualifies Palace Casino Resort as a place of public accommodation pursuant to 42 U.S.C. § 12181(7). Upon information and belief, New Palace Casino, LLC "owns" the public internet website palacecasinoresort.com and "operates" the world-wide website services that are available to the public at Palace Casino Resort. 42 U.S.C. § 12182. Accordingly, New Palace Casino, LLC's website palacecasinoresort.com is a commercial facility in that its operations affect commerce. 42 U.S.C. § 12181 (2)(A). The website palacecasinoresort.com is a place of public accommodation pursuant to 42 U.S.C. § 12181(7). Moreover, On July 26, 2010, the United States Department of Justice issued an Advanced Notice of Proposed Rulemaking ("ANPRM") on Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations. 75 Fed Reg. 43460. The Department of Justice explained in the ANPRM that although the Department has been clear that the ADA applies to websites of public accommodations, inconsistent court decisions, differing standards for determining web accessibility, and repeated calls for Department action warranted further guidance. Id. at 43464. Through the ANPRM, the

Department sought to explore what regulatory provisions it could propose to make clear to entities covered by the ADA of their obligations to make their websites accessible.

6. Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendant's establishment is a place of public accommodation in that it is a place of lodging offering guests rooms for stays that are short term in nature; a variety of restaurants for food and drink, retail items for purchase, and other entertainment activities to the public. Accordingly, it is covered by the ADA and must comply with the Act.

7. Defendant's resort itself is a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(a), which provides:

> The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce:
>
> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor.

In particular, the hotel rooms are a "place of lodging", pursuant to 28 C.F.R. § 36.104, which provides:

> *Place of public accommodation* means a facility operated by a private entity whose operations affect commerce and fall within at least one of the following categories –
>
> (1) Place of lodging, except for an establishment located within a facility that contains not more than five rooms for rent or hire and that actually is occupied by the proprietor of the establishment as the residence of the proprietor. For purposes of this part, a facility is a "place of lodging" if it is –
>
> > (i) An inn, hotel, or motel; or
> >
> > (ii) A facility that –
> >
> > > (A) Provides guest rooms for sleeping for stays that primarily are short-term in nature (generally 30 days or less) where the occupant does not have the right to return to a specific room or unit after the conclusion of his or her stay; and
> > >
> > > (B) Provides guest rooms under conditions and with amenities similar to a hotel, motel, or inn, including the following –
> > >
> > > > (1) On- or off-site management and reservations service;

(2) Rooms available on a walk-up or call-in basis;

(3) Availability of housekeeping or linen service; and

(4) Acceptance of reservations for a guest room type without guaranteeing a particular unit or room until check-in, and without a prior lease or security deposit.

8. Plaintiffs' stay at the resort establishes their conformity to the elements of 28 C.F.R. § 36.104, because the resort was rented to them for a short-term stay, (less than 30 days); Upon Plaintiffs' arrival at Palace Casino Resort, they were required to check in at the front desk with an employee of Palace Casino Resort; Plaintiffs had the opportunity to have housekeeping services during their stay; Plaintiffs did not have the right to return to their specific room after they checked-out of their hotel room at the front desk; the services provided were similar to other hotels or motels in that there was onsite employees and a reservation system, as well as reservations accepted without guaranteeing a particular room until check –in and without a prior lease; and housekeeping or linen service was available.

9. All events giving rise to this lawsuit occurred in the Southern District of Mississippi and the Defendant is a citizen thereof.

10. Plaintiff Patrick Dunn enjoys vacationing in Biloxi, Mississippi because he enjoys the different type of entertainment Biloxi offers as well as the nightlife. Mr. Dunn enjoys the outgoing social lifestyle, whether it is playing casino games or enjoying the night life at the resorts that offer all sorts of social activities and entertainment. More specifically, Mr. Dunn enjoys Palace Casino Resort, which is the subject of this action. Mr. Dunn specifically and definitely intends to continue to go to Palace Casino Resort when he travels to Biloxi because he loves the smoke free environment. Mr. Dunn does not know exactly when he will go back to Palace Casino Resort, because he has not planned out every trip nor every meal for the rest of his life. Such specific planning is not necessary to invoke the ADA. See, e.g. *Parr v. L & L Drive Inn Restaurant* 96 F. Supp.2d 1065, 1079 (D. Haw 2000) and *Segal v. Rickey's Restaurant and Lounge, Inc*. No. 11-61766-cn, (S.D. Fla 2012) ("*Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment*".). Mr. Dunn

definitely intends to return to Palace Casino Resort, however, not only to enjoy the nightlife, sleep, play casino games, drink, eat, and enjoy the entertainment and other activities but also to see if Palace Casino Resort will do the repairs to become ADA compliant and will continue to do so in the future to ensure Defendant maintains its resort to accessibility standards. Mr. Dunn will continue to return even after the repairs are made because Palace Casino Resort is an award winning affordable place to vacation that offers a wide variety of goods, services and entertainment.

11. Mr. Dunn planned a trip to Biloxi, Mississippi to go and enjoy the Mini-Vegas atmosphere playing casino games. Mr. Dunn heard great things about the Palace Casino Resort because of its smoke-free environment, and accordingly, made reservations for his trip at Palace Casino Resort. On or around February 2017, Mr. Dunn went online to the Palace Casino Resort website palacecasinoresort.com to determine if the Palace Resort would meet his accessibility needs but was unable to do so whatsoever, which is a failure by Palace Casino Resort to properly maintain its website and reservation system in accordance with the ADA. As a result of Defendant's failure, Mr.

Dunn was unable to determine any of the accessible features of the hotel and casino itself because Defendant does not identify and describe the accessible features in any form or fashion whatsoever. Nor was Mr. Dunn afforded the opportunity to make reservations online because Mr. Dunn was not able to determine any suites that are accessible whereas other individuals without disabilities are able to reserve non-accessible suites. Due to the lack of accessibility on defendant's website and reservation system, Mr. Dunn made reservations and despite not being afforded the same opportunity as a individual who does not require accessibility needs, wrote in the comments sections that he required an ADA accessible hotel room. Mr. Dunn requested an accessible room with an adjoining non-accessible room for his attending aid(s). Mr. Dunn, after some frustration of feeling inferior, decided that despite the inequality, difficulty and inconvenience this would cause him, he would make do and made the reservations and wrote in the comments section that he required an ADA accessible hotel room. When Mr. Dunn arrived at Palace Casino, the allegedly accessible parking spaces were not compliant in anyway. Mr. Dunn's attending aids had trouble

assisting Mr. Dunn from the passenger seat of his car into his wheelchair because there were not any adjoining access aisles. Once they were able to finally struggle through getting out of the vehicle, Mr. Dunn struggled to get into the elevator and maneuver inside of it because it was so small. Upon getting off the elevator, it was an uphill battle getting to the Entrance of the Palace because the overpass walk had an excessive running slope with no level surfaces at any point to give him a rest.  Mr. Dunn finally got to the check in counter at which point Mr. Dunn was frustrated because the check-in counter was so tall that from his wheelchair he communicated with the counter side wall because he could not see over it to interact with the Palace Casino Resort employee. Mr. Dunn could neither independently complete the commercial transaction by swiping his own credit card, because the credit card machine was mounted on top of the utterly non-compliant counter, nor could he sign anything because there was no writing surface available. Mr. Dunn, out of his prior experiences at other resorts, communicated through the check-in counter wall

with the front desk worker of Palace Casino[2] to inquire again, if there was an accessible room with an adjoining non-accessible room. Mr. Dunn was assured it was accessible, however, the allegedly accessible room was not accessible to Mr. Dunn. Specifically, Mr. Dunn's allegedly accessible room did not have a bench in the bathroom shower so that he was forced to go to the front desk to inquire about the showers accessibility. Ultimately, Mr. Dunn was given a portable shower bench that was entirely to small and noncompliant that it made it exceptionally difficult for him to transfer onto the bench because the grab bars in the shower were too close to the wall, in that Mr. Dunn, could not stick his arm through the spacing between the bar and the wall to transfer on the bench. Nevertheless, Mr. Dunn was not going to let that ruin his trip. During Mr. Dunn's stay, he enjoyed playing the casino games, however, he did not enjoy the Defendants players card reader on the games, because Mr. Dunn was required to insert it into the machine in such a way that all the machines made it impossible for Mr. Dunn to grasp and retrieve his

---

[2] Mr. Dunn's experience when communicating with the employee at the check in counter was not in the same manner as other individuals without disabilities. Mr. Dunn felt as if he was talking to the wall rather than visually interacting with the employee who he was speaking to behind the desk

players card when he finished playing. Instead, Mr. Dunn was forced to ask a stranger for assistance to retrieve his card which made Mr. Dunn feel as if he was treated unfairly because people who are not disabled are able to retrieve their players card without seeking assistance. Mr. Dunn does not understand why Defendant did not consider him or other disabled individuals who have limited use of their hands when implementing the players card readers on the machines because disabled individuals enjoy casino games just like non-disabled enjoy the casino games. Throughout Mr. Dunn's visit, he went from the parking lot to the entranceways, from the parking lot to and throughout the hotel, including his rented hotel room, the services areas, bathrooms, pool area, casinos, the Resorts common areas and its associated amenities, Mignon's Steaks & Seafood, Palace Buffet, Palace Cafe & Bakery, Mignon's Lounge, CONTACT Lounge & Sports Bar, Pure Spa, the gift shop, the marina, paths of travel, recreational areas, and the fitness center. Mr. Dunn, accordingly, has standing as to all the areas he visited. During this vacation, he encountered barriers in the areas described above as well as barriers described more specifically throughout the Complaint. Mr.

Dunn absolutely wants to return to Palace Casino Resort and Mr. Dunn will definitely do so in the future, in particular to see if repairs are being made to achieve and maintain compliance, even after initial repairs are made.

**12.** Plaintiff Hope Elly vacations in Biloxi, Mississippi because she enjoys the relaxing beach environment as well as the entertainment Biloxi offers. Ms. Elly enjoys the laid-back beach environment and resorts that offer all sorts of activities and entertainment. More specifically, Ms. Elly enjoys Palace Casino Resort, which is the subject of this action. Ms. Elly specifically and definitely intends to continue to go to Palace Casino Resort when she travels to Biloxi. Ms. Elly does not know exactly when she will go back to Palace Casino Resort, because she has not planned out every trip nor every meal for the rest of her life. Such specific planning is not necessary to invoke the ADA. See, e.g. *Parr v. L & L Drive Inn Restaurant* 96 F. Supp.2d 1065, 1079 (D. Haw 2000) and *Segal v. Rickey's Restaurant and Lounge, Inc.* No. 11-61766-cn, (S.D. Fla 2012) ("*Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment*".). Ms. Elly

definitely intends to return to Palace Casino Resort, however, not only to sleep, play casino games, drink, eat, and enjoy the entertainment and other activities but also to see if Palace Casino Resort will do the repairs to become ADA compliant. Ms. Elly will continue to return even after the repairs are made because Palace Casino Resort is an affordable and convenient place to vacation that offers a wide variety of goods and services and entertainment.

13. Ms. Elly and her best friend enjoy going on short vacations to Biloxi to enjoy the relaxing beach environment and the assortment of adult entertainment like casino games. Ms. Elly recently went online to palacecasinoresort.com to make reservations for a weekend get away with her best friend. During Ms. Elly's experience with making the travel plans she tried to determine if Palace Casino Resort would meet her accessibility needs but was unable to do so as a result of Palace Casino's failure to properly identify and describe the accessible features of the hotel rooms on the website. As a result of the discriminatory acts by Defendant, Ms. Elly further searched through the Palace Casino Resort website to determine if the hotel had any accessible features at all, or at the very least, assess whether

the establishment would be large enough for her to make do since Defendant Resort failed to identify any of its accessible features. Her review of the Defendants website was inconclusive because the website lacked sufficient information. Ultimately, Ms. Elly decided to go to the Palace Casino Resort because of its smoke free environment that is better for her health so she made reservations, and went there with her best friend. During Ms. Elly's visit she went from the parking lot to the entranceways, from the parking lot to and throughout the hotel, including her rented hotel room, the services areas, bathrooms, pool area, casinos, paths of travel, common areas, recreational areas, and the fitness center. Ms. Elly accordingly, has standing as to all the areas she visited. During this vacation, she encountered barriers in the areas described above as well as barriers described more specifically throughout the Complaint. Ms. Elly wants to return to Palace Casino Resort and Ms. Elly will do so in the future, in particular to see if repairs are being made to achieve and maintain compliance, even after initial repairs are made.

14. Because of the barriers described below in paragraph 27, and throughout the Complaint, Plaintiffs have been denied full and equal

enjoyment of the Defendant's premises on the basis of their disabilities.

15. Plaintiffs accordingly, have Article III standing to pursue this case because (1) they are disabled, pursuant to the statutory and regulatory definition; (2) the Defendant's hotel, casino and other entertainment complex is a place of public accommodation, pursuant to the statutory and regulatory definition; (3) they have suffered a concrete and particularized injury by being denied access to Palace Casino Resort by architectural barriers, by being denied access by the Defendant's practices described throughout this Complaint, and by Defendant's denial of the use of Palace Casino Resort for their full and equal enjoyment as the able-bodied, as described throughout the Complaint, and (4) because of these injuries, there exists a genuine threat of imminent future injury, as described in paragraph 25.

## III.   PLAINTIFFS' CLAIMS

### ADA, Title III

16. On or about July 26, 1990, Congress enacted Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181 et.seq. Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements. The effective

date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181;

20 C.F.R. §36.508 (A); *See also*, § 36.304).

17. Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the

Defendant's establishment is a place of public accommodation in that

it provides transient lodging, as described above and defined by

regulation; and it further offers a variety of restaurants for food and

drink, retail items for purchase, and other entertainment activities to

the public. Accordingly, it is covered by the ADA and must comply

with the Act.

**COUNT ONE**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12182(b)(2)(A)(iv) and (v)**
***(Architectural Barriers)***

**<u>Defendant's Existing Facilities Are Subject to the 2010 ADA Design
Standards for the Portions of the Facilities Addressed in This Complaint</u>**

18. Plaintiffs are informed and believe based on publicly available

information that the original Palace Casino Resort was first

constructed in 1997, and then re-constructed and/or altered in 2005

after Hurricane Katrina. The reconstruction and/or alterations

included but are not limited to a land-based casino, a buffet, and the

resort's fine dining restaurant, all within the first two floors of the

hotel.

19. Additionally, Plaintiffs are informed and believe that from 2010 to 2011 Palace Casino Resort spent an estimated $45 million to complete the largest casino expansion project on the Mississippi Gulf Coast since Hurricane Katrina. The large-scale expansion includes but is not limited to a total of 110,000 square feet of renovations with 38,000 square feet of gaming space, more than 1,000 slot machines, 26 table games including an 8 table poker room, a high limit salon, a new 300 seat buffet featuring live cooking stations and a display bakery, a new café and grill with 50 seats and 24 hour service, an upscale lounge and sports bar with a stage for entertainment, a new front desk, concierge and VIP check-in area, a newly remodeled lobby and atrium area, a new gift shop, spa, fitness center, business center and meeting facilities, Mignon's lounge, and a $1 million smoke lounge were added as Palace Casino Resort was made completely smoke free. Plaintiffs are further informed and believe that in 2013 Palace Casino Resort did a multi-million-dollar renovation to all of its hotel rooms and suits that took several months to complete. The renovation included but is not limited to decorating

all rooms and suits from the floor to the ceiling, adding new bedding, adding flat screen TVs, and completely redesigning the bathrooms. Plaintiffs are further informed and believe that as early as January 2017, Palace Casino Resort completed renovations consisting of adding additional seating, new décor, and adjusting menus and hours for two of its restaurants, Stacked Grill and Palace Café and Bakery.

20. The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an "existing" "facility, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after January 26, 1992, and all "new construction" after January 26, 1993, must be *readily accessible to and usable by individuals with disabilities*, including *individuals who use wheelchairs*. 42 U.S.C. § 12183(a) and (b). 28 *C.F.R.* § 36.402. "Readily accessible to and usable by. . ." is the "new construction" standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 *C.F.R.* § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the "new construction"

standards is if the design and construction of the building to be readily accessible and usable is "structurally impracticable". 42 U.S.C. § 12183(a)(1). The "structural impracticability" defense applies only in rare circumstances of extraordinary terrain. 28 *C.F.R.* § 36.401(c). "Readily accessible to and usable by. . ." is also the "alterations" standard. 42 U.S.C. § 12183(a)(2). "Alterations" must be made to the maximum extent feasible.   42 U.S.C.   § 12183(a)(2); 28 *C.F.R.* § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

21. New construction and alterations must comply with either the Justice Department's 1991 Standards for Accessible Design, or the 2010 Standards for Accessible Design. 28 *C.F.R.* § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required,

if the start of physical construction or alterations occurs before September 15, 2010. 28 *C.F.R.* § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 *C.F.R.* § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. *Where the facility does not comply with the 1991 Standards, the 2010 Standards are applicable.* See 28 C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and

that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards." Moreover, please note that 28 C.F.R. § 36.304(d), Appendix provides: "Elements that do not comply with the requirements for those elements in the 1991 Standards or that do not comply with the supplemental requirements (i.e., elements for which there are neither technical nor scoping specifications in the 1991 Standards), must be modified to the extent readily achievable" in accordance with the 2010 Standards.

22. For the architectural barriers at issue in this case, the 2010 Standards for Accessible Design are applicable.

**Plaintiffs' Concrete and Particularized Standing to Pursue an Injunction**

23. The Defendant has discriminated, and continues to discriminate, against Plaintiffs, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at Palace Casino Resort in derogation of 42 U.S.C. § 12101 et. seq., and as prohibited by 42 U.S.C. § 12182 et-seq. As "new construction", the building must be readily accessible to and usable by individuals

with disabilities. 42 U.S.C. § 12183 (a) and (b).  Defendant's failure to remove the existing barriers thus violates 42 U.S.C. § 12182(b)(2)(A)(iv), which requires removal of architectural barriers.

24.  As described above, prior to the filing of this lawsuit, Plaintiffs were denied full and equal access to all of the benefits, accommodations and services offered to individuals without disabilities within and about the Defendant's facility. Plaintiffs' access was inhibited by each of the described architectural barriers detailed in this Complaint which remain at the facility in violation of the ADA. Because of the foregoing, Plaintiffs have suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

25.  Plaintiffs have definite plans to return to Palace Casino Resort in the future, as described in paragraphs 10-13. Plaintiffs will return to Palace Casino Resort within the next months not only to stay, shop, eat, drink, and enjoy other entertainment, but also to see if Palace Casino Resort has repaired the barriers, and changed its practices and procedures. Plaintiffs will continue to do so even when Palace Casino Resort is repaired. Absent remedial action by Defendant, Plaintiffs will continue to encounter the architectural barriers, and the

discriminatory policies, practices, and procedures described herein and as a result, be discriminated against by Defendant on the basis of their disabilities. As persuasive authority and also as a matter of common sense, the Eleventh Circuit, held in *Houston v. Marod Supermarkets*, that when architectural barriers have not been remedied *"there is a 100% likelihood that plaintiff... will suffer the alleged injury again when he returns to the store."* Due to the definiteness of Plaintiffs' future plans to continue visiting the subject facility, there exists a genuine threat of imminent future injury.

## Architectural Barriers

26. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

27. Plaintiffs have been throughout all the parking lot at Palace Casino Resort and from the parking lot to the entrances, to and throughout the retail areas, the retail areas themselves, from the entrances to and throughout the restrooms, the restrooms themselves; from the entrances to and throughout the dining areas, the dining areas

themselves, the common areas including the hotel lobby, casinos, arcade, and fitness and spa area, the sales and service counters, throughout circulation paths and accessible routes, from the parking lot to and throughout the common areas including the retail and service areas, paths of travel, and in particular but not limited to all of which is more specifically described below. Moreover, Defendant's facility located at 158 Howard Avenue, Biloxi, Mississippi 39530, more commonly known as "Palace Casino Resort", violates the ADA in the hotel guest rooms, check-in and lobby area, parking lot, the entranceways, from the parking lot to and throughout the common areas and the retail service areas, bathrooms, paths of travel, common areas, and in particular but not limited to:

## PARKING AREAS

a. Palace Casino provides parking spaces in the parking structure for able-bodied individuals, but fails to provide any ADA accessible parking spaces for non-able-bodied individuals, including but not limited to the following:

i. The purported accessible parking spaces in the parking structure have cross slopes and running slopes that are impermissibly too steep;

ii. The purported accessible parking spaces fail to have an access aisle that connects to an accessible route to the entrance of Palace Casino;

iii. The parking spaces and its non-existing adjacent access aisles fail to be properly marked so as to be discouraged from parking in them;

iv. The purported accessible parking spaces fail to be wide enough;

v. The existing parking spaces fail to have ADA compliant adjacent access aisles;

vi. Palace Casino fails to have and otherwise fails to evenly disburse the accessible parking spaces throughout the parking structure;

vii. There are no accessible parking spaces located at the shortest accessible route to the entrance;

viii. There are no ADA compliant parking spaces that provide the required designated ADA signage mounted at 60 inches maximum above the finished;

ix. Palace Casino fails to maintain its parking spaces so that they are readily accessible to and usable by individuals with disabilities;

x. There is no signage displaying the international symbol of accessibility at any of the parking spaces;

b. Palace Casino provides parking spaces in the parking structure for able-bodied individuals, but fails to provide any ADA van accessible parking spaces for non-able-bodied individuals who drive mobility van which includes but is not limited to the following failures by Defendant:

i. There are no "van" accessible parking spaces that measure 132 inches wide with a 60 inch wide adjacent access aisle, or alternatively measure 96 inches wide with a 96 inch wide adjacent access aisle;

ii. There are no van accessible parking spaces with adjacent access aisles that connect to an accessible route to the entrance of Palace Casino;

iii. There is no signage designating the van accessible parking spaces as "van accessible" that is mounted 60 inches maximum above the finished floor or ground surface;

iv. Palace Casino fails to have and otherwise fails to evenly disburse the van accessible parking spaces throughout the parking structure;

v. There are no van accessible parking spaces located at the shortest accessible route to the entrance;

vi. Palace Casino fails to maintain its parking spaces so that they are readily accessible to and usable by individuals with disabilities;

c. Palace Casino provides a route from the parking lot leading to the entrances for able-bodied individuals, but fails to provide an ADA accessible route from the parking structure to the entrances for non-

able-bodied individuals which including but is not limited to the following elements:

i. The curb ramps on the purported accessible route from the non-compliant ADA parking spaces towards the entrance have running slopes that exceed the required slope of 1:12;

ii. The curb ramps on the purported accessible route from the non-compliant ADA parking spaces towards the entrance have cross slopes that exceed the required slope of 1:48;

iii. There is no ADA accessible route that conforms to the standards for accessible design in all of the elements that are required to be accessible which includes but is not limited to the walking surfaces, curb ramps, ramp landings, doors, and any other element that is required to be readily accessible to and usable by individuals with disabilities;

iv. The walking surface on the accessible route from the parking structure to the casino has a running slope that

exceeds the maximum allowed slope of 1:20 which prohibits individuals with disabilities from being afforded the opportunity to use the walkway;

v. Palace Casino provides direct access from the parking structure to the building for able bodied individuals to conveniently access the direct entrance but fails to provide that same equality to disabled individuals which segregates disabled individuals to an inferior benefit of the Palace Casino;

vi. Palace Casino fails to have an ADA accessible public entrance for disabled individuals to enter the palace casino from the parking deck;

d. Palace Casino Resort provides an elevator for able-bodied individuals, but fails to provide an ADA accessible elevator for non-able-bodied individuals, which includes but is not limited to the following failures by Defendant:

i. Palace Casino fails to provide floor designations on the elevator door jambs;

ii. The elevator fails to have floor designations on both jambs of the elevator hoistway entrances;

iii. There is insufficient clear floor space for a wheelchair user to be able to approach the elevator control buttons;

iv. The elevator fails to be configured in a way that provides the required turning space for a wheelchair user to be afforded the opportunity to use the elevator to access the second and third floors;

v. Palace Casino Resort fails to maintain the accessible features of the elevator that are required to be readily accessible to and usable by individuals with disabilities;

## GUEST ROOMS

e. Palace Casino provides hotel rooms for able bodied individuals but fails to provide ADA accessible hotel rooms for individuals with disabilities which prohibits individuals with disabilities from the full and equal opportunity to access the goods and services at the Palace Casino Resort which includes but is not limited to the following failures of Defendant:

i. There is not the required amount of ADA accessible guest rooms that provide the required level of ADA compliant toilet and bathing facilities within the guest rooms;

ii. The allegedly accessible guest rooms fail to provide ADA compliant shower compartments which includes both the transfer type compartments and its associated accessible elements and roll-in shower compartments and its associated accessible elements;

iii. The existing shower compartments fail to provide grab bars that conform to the ADA Standards for Accessible Design which prohibits disabled individuals from being afforded the opportunity to independently use the compartment;

iv. The existing practice at Palace Resort is to provide disabled individuals with portable bench seats for the showers rather than making its guest rooms compliant with the ADA Standards for Accessible Design;

## GIFT SHOP

**f.** Palace Casino provides an accessible route to and throughout the shopping retail aisles in the gift shop for able-bodied individuals but fails to provide an ADA accessible route to and throughout the retail shopping aisle in the gift shop for individuals with disabilities which prohibits individuals with disabilities from the full and equal opportunity to access the goods and services at the Palace Casino Resort Gift Shop, including but not limited to the following elements:

**v.** Throughout the accessible route there is merchandise that is for sale to the public that obstructs the required 36 inches of clear floor space on the accessible route which prohibits individuals with disabilities to have the same shopping experience as individuals without disabilities;

**vi.** The current practice at the Palace Casino gift shop is to maintain the merchandise display tables and racks within the required clear floor or ground space of the accessible route which prohibits individuals with

disabilities from the full and equal enjoyment of the goods and services at the Palace Casino gift shop;

vii. Palace Casino gift shop fails to have or otherwise fails to enforce its policies, practices, or procedures on maintaining in operable working condition the features of the purported accessible route to and throughout the retail store shopping aisles so that the goods and services are readily accessible to and usable by individuals with disabilities;

viii. Palace Casino gift shop has ineffective policies, practices, or procedures that ensures the accessible route is readily accessible to and usable by individuals with disabilities so that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals without disabilities;

g. Palace Casino gift shop provides shelves displaying merchandise that is for sale to the public to able-bodied individuals, but fails to provide non-able-bodied individuals the same opportunity to

participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that afforded to other individuals by failing to provide ADA accessible display shelves displaying merchandise that is for sale;

h. Palace Casino gift shop provides a sales/service counter for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, including but not limited to the following elements:

A. The check-out counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

i. There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

ii. There is not clear floor space that is at least 48 inches long x 30 inches wide provided

adjacent to the 36-inch minimum length of counter;

**B.** The existing check-out counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **iii.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36

inches above the finished floor positioned
for a forward approach;

C. There is no ADA accessible portion of the check-out
counter that extends the same depth as the non-
accessible portion of the check-out counter;

D. There is no ADA accessible check writing surface
provided 28 inches minimum and 34 inches maximum
above the finished floor that allows for the required
knee and toe clearance;

E. Palace Casino gift shop provides a point of sale
machine to transact business at the check-out counter
for able-bodied individuals, but fails to provide the
same level of service to non-able-bodied individuals by
providing a point of sale machine at an accessible
portion of the counter;

F. The current practice at Palace Casino gift shop is to
place merchandise within the required clear counter
surface;

**G.** Palace Casino gift shop fails to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

## WOMEN'S RESTROOM BY BAKERY

**i.** There is no overhead directional signage displaying the International Symbol of Accessibility informing and directing disabled individuals to the ADA accessible restrooms;

**j.** Palace Casino provides a wheelchair accessible toilet compartment for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following elements:

    **i.** The toilet compartment door fails to be self-closing;

    **ii.** There is not the required 36 inches of clear floor space for a disabled individual to enter and/or exit the toilet compartment;

iii. The locking mechanism on the toilet compartment door requires the use of tight grasping, pinching, or twisting of the wrist;

iv. The existing toilet compartment fails to measure the required width of 60 inches wide;

v. The grab bars in the toilet compartment exceed the maximum allowed height of 36 inches above the finished floor;

vi. The highest operable part on the toilet seat cover dispenser exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor;

vii. The toilet paper dispenser fails to be properly located 7 inches minimum and 9 inches maximum in front of the water closet;

viii. The water closet seat exceeds the maximum allowed height of 19 inches above the finished floor;

ix. Palace Casino fails to maintain the accessible features within the toilet compartment that are required to be

readily accessible to and usable by individuals with disabilities;

k. Palace Casino provides a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following elements:

　　i. The top counter surface of the lavatory counter exceeds the maximum allowed height of 34 inches above the finished floor;

　　ii. The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

　　iii. There is insufficient knee and toe clearance under the lavatory sinks for a wheel chair user to be able to position for a forward approach;

　　iv. The faucet at the lavatory sink fails to remain on for the required 10 seconds;

v. The tissue boxes are located on top of the paper towel dispensers so that the disabled cannot independently access the tissue and are segregated and relegated to an inferior benefit;

vi. The current practice at Palace Casino Resort is to locate the tissue boxes on top of the paper towel dispensers so that disabled individuals cannot reach the tissue boxes;

vii. Palace Casino fails to maintain the accessible features at the lavatory that are required to be readily accessible to and usable by individuals with disabilities;

## WOMEN'S RESTROOM BY MIGNON

l. The restroom entrance door fails to provide the required perpendicular clear floor space for an individual with a disability to be afforded the opportunity to maneuver into and out of the restroom;

m. Palace Casino provides a wheelchair accessible toilet compartment on the right side for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or

benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following elements:

    i. There are no door pulls located on both sides of the toilet compartment door;

    ii. The toilet compartment door fails to be self-closing;

    iii. The coat hook exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor;

    iv. The water closet fails to be located on the side opposite the door in the toilet compartment;

    v. The rear wall grab bar fails to extend the minimum required length of 36 inches;

    vi. The rear wall grab bar is not properly located 12 inches on the closed side of the water closet and 24 inches on the transfer side;

vii. The centerline of the water closet fails to measure the required distance of 16-18 inches from the side wall;

viii. The grab bars in the existing toilet compartment exceed the maximum allowed height of 36 inches above the finished floor;

ix. The toilet paper dispenser fails to be properly located 7 inches minimum and 9 inches maximum from the front of the water closet;

x. The highest operable part on the toilet seat cover dispenser exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor;

xi. The water closet seat exceeds the maximum allowed height of 19 inches above the finished floor;

xii. The toiletries trashcan is mounted on the wall at a height that exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor;

        **xiii.** Palace Casino fails to maintain the accessible features within the toilet compartment that are required to be readily accessible to and usable by individuals with disabilities;

**n.** Palace Casino provides a wheelchair accessible toilet compartment on the left side for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following elements:

        **i.** There are not door pulls located on both sides of the toilet compartment door;

        **ii.** The toilet compartment door fails to be self-closing;

        **iii.** The coat hook exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor;

iv. The water closet fails to be located on the side opposite the door in the toilet compartment;

v. The toiletries trashcan is mounted on the wall at a height that exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor;

vi. The highest operable part on the toilet seat cover dispenser exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor;

vii. The grab bars in the existing toilet compartment exceed the maximum allowed height of 36 inches above the finished floor;

viii. The rear wall grab bar fails to extend the minimum required length of 36 inches;

ix. The rear wall grab bar is not properly located 12 inches on the closed side of the water closet and 24 inches on the transfer side;

    **x.** The centerline of the water closet fails to measure the required distance of 16-18 inches from the side wall;

    **xi.** The toilet paper dispenser fails to be properly located 7 inches minimum and 9 inches maximum from the front of the water closet;

    **xii.** The water closet seat exceeds the maximum allowed height of 19 inches above the finished floor;

    **xiii.** Palace Casino fails to maintain the accessible features within the toilet compartment that are required to be readily accessible to and usable by individuals with disabilities;

**o.** Palace Casino provides a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following elements:

i. The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

ii. There is insufficient knee and toe clearance under the lavatory sinks for a wheel chair user to be able to position for a forward approach;

iii. The pipes underneath the lavatory sink fail to be properly insulated;

iv. The clear floor space serving the paper towel dispenser is obstructed by the large trash can;

v. The current practice at Palace casino is to locate the trash can in a way that prohibits disabled individuals from being afforded the opportunity to approach the paper towel dispenser;

vi. Palace Casino fails to maintain the accessible features at the lavatory that are required to be readily accessible to and usable by individuals with disabilities;

## WOMEN'S RESTROOM BY WILLY WONKA SLOT MACHINE

**p.** The restroom entrance accessible route fails to provide the required passing space for a disabled individual to be afforded the opportunity to enter and/or exit the restroom while another individual is attempting to enter and/or exit;

**q.** There is a trashcan obstructing the required 36 inches of clear floor or ground space to enter and/or exit the women's restroom;

**r.** The current practice at Palace Casino Resort is to locate a trashcan within the required 36 inches of clear floor or ground space to enter and/or exit the women's restroom;

**s.** Palace Casino provides a wheelchair accessible toilet compartment for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following elements:

  **i.** The toilet compartment door fails to be self-closing;

ii. The locking mechanism on the toilet compartment door requires the use of tight grasping, pinching, or twisting of the wrist;

iii. The grab bars in the toilet compartment exceed the maximum allowed height of 36 inches above the finished floor;

iv. The rear wall grab bar fails to extend the minimum required length of 36 inches;

v. The rear wall grab bar is not properly located 12 inches on the closed side of the water closet and 24 inches on the transfer side;

vi. The water closet seat exceeds the maximum allowed height of 19 inches above the finished floor;

vii. The toilet paper dispenser fails to be properly located 7 inches minimum and 9 inches maximum from the front of the water closet;

viii. Palace Casino fails to maintain the accessible features within the toilet compartment that are required to be

readily accessible to and usable by individuals with disabilities;

t.   Palace Casino provides a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following elements:

   i.   There is not at least one ADA accessible lavatory that measures a maximum of 34 inches above the finished floor to the top surface of the counter;

   ii.  There is not at least one ADA accessible lavatory that provides the required knee and toe clearance for a wheel chair user to be able to position for a forward approach;

   iii. The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

   iv.  The clear floor space serving the paper towel dispenser is obstructed by the large trash can;

v.  The current practice at Palace casino is to locate the trash can in a way that prohibits disabled individuals from being afforded the opportunity to approach the paper towel dispenser;

vi.  Palace Casino fails to maintain the accessible features at the lavatory that are required to be readily accessible to and usable by individuals with disabilities;

## WOMEN'S RESTROOM BY FITNESS CENTER

u.  The restroom entrance accessible route fails to provide the required passing space for a disabled individual to be afforded the opportunity to enter and/or exit the restroom while another individual is attempting to enter and/or exit;

v.  Palace Casino provides a wheelchair accessible toilet compartment for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following elements:

i.   The toilet compartment door is not self-closing;

ii.  The toilet compartment door fails to have door pulls located on both sides;

iii. The existing toilet compartment fails to measure the required width of 60 inches;

iv.  The coat hook exceeds the maximum allowed height of 48 inches above the finished floor;

v.   The grab bar exceeds the required height of 33 inches minimum and 36 inches maximum above the finished floor;

vi.  Palace Casino Resort fails to provide a side wall grab bar within the toilet compartment, which prohibits disabled individuals from being afforded the opportunity to transfer onto and off of the water closet independently;

vii. The highest operable part on the toilet seat cover dispenser exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor;

viii. The toiletries trashcan is mounted on the wall above the toilet paper dispenser at a height that exceeds the maximum

allowed unobstructed reach range of 48 inches above the finished floor;

    **ix.** Palace Casino fails to maintain the accessible features within the toilet compartment that are required to be readily accessible to and usable by individuals with disabilities;

**w.** Palace Casino provides a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following elements:

    **i.** There is insufficient knee and toe clearance under the lavatory sink for a wheel chair user to be able to position for a forward approach;

    **ii.** The highest operable part on the paper towel dispenser at the lavatory sink exceeds the maximum allowed unobstructed side reach range of 48 inches above the finished floor;

      iii. The tissue box is located on top of the paper towel dispenser so that the disabled cannot independently access the tissue and are segregated and relegated to an inferior benefit;

      iv. The current practice at Palace Casino Resort is to locate the tissue box on top of the paper towel dispenser so that disabled individuals cannot reach the tissue box;

**x.** Palace Casino fails to maintain the accessible features at the lavatory that are required to be readily accessible to and usable by individuals with disabilities;

## MEN'S RESTROOM BY BAKERY

**y.** There is no signage displaying the International Symbol of Accessibility identifying the interior space within the restroom area as ADA accessible;

**z.** Palace Casino provides a wheelchair accessible toilet compartment for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a

good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following elements:

    i. The toilet compartment door is not self-closing;

    ii. The toilet compartment door fails to have door pulls located on both sides;

    iii. The existing toilet compartment fails to measure the required width of 60 inches wide;

    iv. The center line of the water closet fails to measure the required distance of 16-18 inches from the side wall;

    v. The toilet paper dispenser is not properly located 7 inches minimum and 9 inches maximum from the front of the water closet;

    vi. Palace Casino fails to maintain the accessible features within the toilet compartment that are required to be readily accessible to and usable by individuals with disabilities;

**aa.**    Palace Casino provides an ambulatory accessible toilet compartment for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following elements:

    **i.** The existing toilet compartment fails to meet the required depth of 60 inches;

    **ii.** The toilet compartment door is not self-closing;

    **iii.** The toilet compartment door fails to have door pulls located on both sides;

**bb.** Palace Casino provides urinals for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, including but not limited to the following elements in the toilet compartment furthest from the restroom entrance:

     **i.** There is not at least one urinal with a rim that measures a maximum of 17 inches above the finished floor and 13.5 inches deep minimum measured from the outer face of the urinal rim;

     **ii.** The urinal is confined on all or part of three sides and therefore the width fails to meet the required 36 inches;

**cc.** Palace Casino provides a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following elements:

     **i.** The top counter surface of the lavatory counter exceeds the maximum allowed height of 34 inches above the finished floor;

     **ii.** The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

      iii. There is insufficient knee and toe clearance under the lavatory sinks for a wheel chair user to be able to position for a forward approach;

## MEN'S RESTROOM BY MIGNON

    **dd.**    The restroom entrance door fails to provide the required perpendicular clear floor space for a individual with a disability to be afforded the opportunity to maneuver into and out of the restroom;

    **ee.** Palace Casino provides a wheelchair accessible toilet compartment for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following elements:

      **i.** The toilet compartment door is not self-closing;

      **ii.** The toilet compartment door fails to have door pulls located on both sides;

iii. The existing toilet compartment fails to measure the required width of 60 inches wide;

iv. The center line of the water closet fails to measure the required distance of 16-18 inches from the side wall;

v. The toilet paper dispenser is not properly located 7 inches minimum and 9 inches maximum from the front of the water closet;

vi. The highest operable part on the toilet seat cover dispenser exceeds the maximum allowed height for an obstructed reach;

vii. The coat hook exceeds the maximum allowed height of 48 inches above the finished floor;

viii. Palace Casino fails to maintain the accessible features within the toilet compartment that are required to be readily accessible to and usable by individuals with disabilities;

**ff.** Palace Casino provides urinals for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, including but not limited to the following elements in the toilet compartment furthest from the restroom entrance:

    **i.** There is not at least one urinal with a rim that measures a maximum of 17 inches above the finished floor and 13.5 inches deep minimum measured from the outer face of the urinal rim;

    **ii.** The urinal is confined on all or part of three sides and therefore the width fails to meet the required 36 inches;

**gg.** Palace Casino provides a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following elements:

i. There is not at least one ADA accessible lavatory that measures a maximum of 34 inches above the finished floor to the top surface of the counter;

ii. There is not at least one ADA accessible lavatory that provides the required knee and toe clearance for a wheel chair user to be able to position for a forward approach;

iii. The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

iv. The clear floor space serving the paper towel dispenser is obstructed by the large trash can;

v. The current practice at Palace casino is to locate the trash can in a way that prohibits disabled individuals from being afforded the opportunity to approach the paper towel dispenser;

## MEN'S RESTROOM BY WILLY WONKA SLOT MACHINE

hh. The restroom entrance accessible route fails to provide the required passing space for a disabled individual to be afforded the

opportunity to enter and/or exit the restroom while another individual is attempting to enter and/or exit;

ii. Palace Casino provides a wheelchair accessible toilet compartment for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following elements:

    i. The toilet compartment door is not self-closing;

    ii. The toilet compartment door fails to have door pulls located on both sides;

    iii. The toilet paper dispenser is not properly located 7 inches minimum and 9 inches maximum from the front of the water closet;

    iv. The side wall grab bar exceeds the required height of 33-36 inches maximum above the finished floor;

v. The rear wall grab bar exceeds the required height of 33-36 inches maximum above the finished floor;

vi. The highest operable part on the toilet seat cover dispenser exceeds the maximum allowed height for an obstructed reach;

vii. The coat hook exceeds the maximum allowed height of 48 inches above the finished floor;

viii. Palace Casino fails to maintain the accessible features within the toilet compartment that are required to be readily accessible to and usable by individuals with disabilities;

jj. Palace Casino provides urinals for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, including but not limited to the following elements in the toilet compartment furthest from the restroom entrance:

      **i.** There is not at least one urinal with a rim that measures a maximum of 17 inches above the finished floor and 13.5 inches deep minimum measured from the outer face of the urinal rim;

     **ii.** The urinal is confined on all or part of three sides and therefore the width fails to meet the required 36 inches;

**kk.** Palace Casino provides an ambulatory accessible toilet compartment for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following elements:

      **i.** The centerline of the water closet fails to measure the required distance of 17-19 inches measured from the side walls;

     **ii.** The top seat height of the water closet fails to meet the required height of 17-19 inches maximum above the finished floor;

       **iii.** The existing compartment exceeds the required width of 35 inches minimum and 37 inches wide maximum;

       **iv.** The toilet compartment door is not self-closing;

       **v.** The toilet compartment door fails to have door pulls located on both sides;

**ll.** Palace Casino provides a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following elements:

       **i.** There is not at least one ADA accessible lavatory that measures a maximum of 34 inches above the finished floor to the top surface of the counter;

       **ii.** There is not at least one ADA accessible lavatory that provides the required knee and toe clearance for a wheel chair user to be able to position for a forward approach;

       **iii.** The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

iv. The clear floor space serving the paper towel dispenser is obstructed by the large trash can;

v. The current practice at Palace casino is to locate the trash can in a way that prohibits disabled individuals from being afforded the opportunity to approach the paper towel dispenser;

## MEN'S RESTROOM BY FITNESS CENTER

mm. The restroom entrance accessible route fails to provide the required passing space for a disabled individual to be afforded the opportunity to enter and/or exit the restroom while another individual is attempting to enter and/or exit;

nn. Palace Casino provides a wheelchair accessible toilet compartment for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following elements:

i. The toilet compartment door is not self-closing;

ii. The toilet compartment door fails to have door pulls located on both sides;

iii. The existing toilet compartment fails to measure the required width of 60 inches;

iv. The toilet seat cover dispenser fails to measure a minimum of 12 inches above the top gripping surface on the side wall grab bar;

v. The toilet paper dispenser is not properly located 7 inches minimum and 9 inches maximum from the front of the water closet;

vi. The side wall grab bar exceeds the required height of 33-36 inches maximum above the finished floor;

vii. The rear wall grab bar exceeds the required height of 33-36 inches maximum above the finished floor;

viii. The highest operable part on the toilet seat cover dispenser exceeds the maximum allowed height for an obstructed reach;

ix. The coat hook exceeds the maximum allowed height of 48 inches above the finished floor;

x. Palace Casino fails to maintain the accessible features within the toilet compartment that are required to be readily accessible to and usable by individuals with disabilities;

oo. Palace Casino provides urinals for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, including but not limited to the following elements in the toilet compartment furthest from the restroom entrance:

i. There is not at least one urinal with a rim that measures a maximum of 17 inches above the finished floor and 13.5 inches deep minimum measured from the outer face of the urinal rim;

ii. The urinal is confined on all or part of three sides and therefore the width fails to meet the required 36 inches;

**pp.** Palace Casino provides a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following elements:

    **i.** There is not at least one ADA accessible lavatory that measures a maximum of 34 inches above the finished floor to the top surface of the counter;

    **ii.** There is not at least one ADA accessible lavatory that provides the required knee and toe clearance for a wheel chair user to be able to position for a forward approach;

    **iii.** The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

    **iv.** The clear floor space serving the paper towel dispenser is obstructed by the large trash can;

    **v.** The current practice at Palace casino is to locate the trash can in a way that prohibits disabled individuals

from being afforded the opportunity to approach the

paper towel dispenser;

## CASINO AREA

qq. Palace Casino provides players club cards for able bodied

individuals to enjoy rewards and other benefits at the casino games

but fails to provide that same level of service to disabled individuals

which includes but is not limited to the following failures of

Defendant:

    i. The players club card machine requires the use of tight

    grasping, twisting, and pinching of the wrist;

rr. Palace Casino provides casino games for able bodied individuals but

fails to provide that same experience by providing ADA accessible

arcade games to non-able bodied individuals, including but not

limited to the following elements:

    i. The casino games do not provide the required clear floor

    or ground space for an individual with a disability to

    approach the game;

ss. Palace Casino provides cashier counters for able-bodied individuals

but fails to afford non-able-bodied individuals the same experience

by not providing an ADA accessible counter including but not limited to the following elements:

**A.** The cashier counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

    **i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing cashier counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches

above the finished floor positioned for a forward approach;

    **ii.**    There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **iii.**    There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.**    There is no ADA accessible portion of the cashier counter that extends the same depth as the non-accessible portion of the cashier counter;

**D.**    Palace Casino fails to maintain the accessible features at the cashier counter that are required to be readily accessible to and usable by individuals with disabilities;

**BAKERY**

rr. Palace Casino provides a bakery service counter for able-bodied individuals to place orders for food, pastries and drinks, but fails to afford non-able-bodied individuals the same experience by not providing an ADA accessible counter including but not limited to the following elements:

  A. The service counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

  i. There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

  ii. There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

  B. The existing service counter fails to provide a minimum of 30 inches of clear counter surface for individuals with

disabilities to be able to make a forward approach to the counter;

i.  There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

ii.  There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

iii.  There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

C. There is no ADA accessible portion of the service counter that extends the same depth as the non-accessible portion of the service counter;

D. Palace Casino bakery fails to maintain the accessible features at the ordering service counter that are required to be readily accessible to and usable by individuals with disabilities;

ss. Palace Casino provides a bakery check-out counter for able-bodied individuals to pay for and pick up their food and drink orders, but fails to afford non-able-bodied individuals the same experience by not providing an ADA accessible counter including but not limited to the following elements:

A. The check-out counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

i. There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

ii.   There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

B.   The existing check-out counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

i.   There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

ii.   There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

iii.   There is no clear floor space that is at least 30 inches wide x 48 inches long provided

underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

C. There is no ADA accessible portion of the check-out counter that extends the same depth as the non-accessible portion of the check-out counter;

D. There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

E. Palace Casino bakery provides a point of sale machine to transact business at the check-out counter for able-bodied individuals, but fails to provide the same level of service to non-able-bodied individuals by providing a point of sale machine at an accessible portion of the counter;

F. Palace Casino bakery fails to maintain the accessible features at the sales/service counter that are required to

be readily accessible to and usable by individuals with disabilities;

tt. Palace Casino bakery provides several different style seating options for able-bodied individuals to sit and enjoy their pastries, food and drinks while at the bakery, but fails to provide that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to an inferior benefit of the bakery dining area;

uu. Palace Casino provides dining tables in the bakery for able-bodied individuals to sit and enjoy their pastries, food and drinks, but fails to provide the same level of goods and services to disabled individuals, which includes but is not limited to the following elements:

  i. There are no ADA accessible dining tables provided 28 inches minimum and 34 inches maximum above the finished floor that allow for the proper knee clearance;

  ii. There are no ADA accessible dining tables provided 28 inches minimum and 34 inches maximum above the finished floor that allow for the proper toe clearance;

iii. The dining tables fail to have the required 5% ADA accessible seating and be evenly disbursed throughout the seating area;

iv. There are no dining tables that provide the required 30x48 inches of clear floor or ground space for a forward approach;

v. Palace Casino bakery fails to maintain the accessible features at the dining tables;

vv. Palace Casino provides a high-top table in the bakery for able-bodied individuals to sit and enjoy their pastries, food and drinks, but fails to provide the same level of goods and services to disabled individuals, which includes but is not limited to the following elements:

i. There is no ADA accessible high-top table provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the proper knee clearance;

ii. There is no ADA accessible high-top table provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the proper toe clearance;

iii. The high-top table fails to provide at least 5% ADA accessible seating;

iv. The high-top table fails to provide the required 30x48 inches of clear floor or ground space for a forward approach;

v. Palace Casino bakery fails to maintain the accessible features at the high-top table;

## MIGNON'S

ww. Palace Casino provides a bar area for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, including but not limited to the following elements:

i. The top surface of the Mignon lounge bar exceeds the maximum allowed height of 34 inches above the finished floor;

ii. The Mignon bar area fails to provide at least five percent (5%) ADA accessible seating;

iii. The bar counter fails to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

iv. The bar counter fails to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

v. Palace Casino fails to maintain the accessible features at Mignon bar;

xx. Palace Casino provides two types of seating tables for able-bodied individuals in the Mignon lounge area (bar seating and lounge seating), but fails to provide that same level of service to individuals without disabilities, which segregates and relegates individuals with disabilities to an inferior benefit of Palace Casino Resort;

yy. Palace Casino provides a high-top tables in the bar area for able-bodied individuals to sit and enjoy their food and drinks, but fails to provide the same level of goods and services to disabled

individuals, which includes but is not limited to the following failures by Defendant:

     i. There is no ADA accessible high-top table provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the proper knee clearance;

     ii. There is no ADA accessible high-top table provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the proper toe clearance;

     iii. The high-top table fails to provide at least 5% ADA accessible seating;

     iv. The high-top table fails to provide the required 30x48 inches of clear floor or ground space for a forward approach;

     v. Palace Casino fails to maintain the accessible features at the high-top tables;

zz. Palace Casino Resort provides a lounge area for able-bodied individuals to sit and relax while socializing, but fails to afford non-able-bodied individuals the same opportunity to participate in, or

benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit;

aaa. Palace Casino Resort provides seating in the lounge area for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following elements:

   i. There is not at least five percent (5%) ADA accessible seating;

   ii. There is no ADA accessible lounge seating that conforms to the standards for accessible design in all of the elements that are required to be readily accessible to and usable by individuals with disabilities;

   iii. There is not 36 inches of clear floor or ground space around the lounge area seating for a wheelchair user to be able to approach and transfer onto the seating;

iv. The current practice at Palace Casino Resort is to position and otherwise arrange the lounge seating in a way that prohibits disabled individuals from being afforded the opportunity to use the lounge area;

bbb. Palace Casino Resort provides tables in the lounge area for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following elements:

v. The tables do not measure 28-34 inches above the finished floor;

vi. The tables fail to provide the required knee clearance;

vii. The tables fail to provide the required toe clearance;

viii. The tables obstruct the required 36 inches of clear floor or ground space for a wheelchair user to approach and transfer onto the lounge area seating;

ix. The current practice at Palace Casino Resort is to locate the lounge tables within the required 36 inches of clear floor or

ground space so that disabled individuals cannot approach or transfer onto the lounge area seating;

**x.** Palace Casino Resort fails to maintain the accessible features of the lounge area that are required to be readily accessible to and usable by individuals with disabilities;

## FITNESS CENTER

**ccc.** Palace Casino provides a fitness center for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, including but not limited to the following elements:

**i.** Palace Casino fails to provide at least one type of each exercise machine with the clear floor or ground surface for a wheelchair user to be able to approach the equipment;

**ii.** Palace Casino fails to maintain an adjacent accessible route to the exercise machines clear floor space which prohibits individuals with disabilities from being

afforded the opportunity to maneuver in the fitness room;

 iii. Palace Casino fails to maintain the accessible features within the fitness center that are required to be readily accessible to and usable by individuals with disabilities;

## CONCIERGE AREA

**ddd.** Palace Casino provides a concierge counter to afford able-bodied individuals services such as assisting with their baggage, valet parking, and among other services but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from the goods, services, privileges, advantages, or accommodations that is equal to that experience afforded to other individuals without disabilities which includes but is not limited to the following failures by Defendant:

 i. The concierge counter exceeds the maximum allowed height of 36 inches above the finished floor;

 ii. There is no 36-inch-wide clear counter surface provided at the counter for individuals with disabilities to be

afforded the opportunity to transact business at the valet counter.

iii. There is no ADA accessible portion of the sales/service counter that extends the same depth as the non-accessible portion of the sales/service counter;

iv. The facility provides a valet counter for able-bodied individuals but fails to afford non-able-bodied individuals the full and equal enjoyment to participate in or benefit from, the goods, services, facilities, privileges, advantages, or accommodations that is a comparable experience to that of able bodied individuals;

eee. Palace Casino provides lounge seating chairs in the concierge area for able-bodied individuals to sit and relax while waiting on concierge service, but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities

which segregates and relegates individuals with disabilities to an inferior benefit of Palace Casino;

## CHECK-IN LOBBY AREA

fff.  Palace Casino provides a check-in counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures by Defendant:

    A. The existing counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

        i.  There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

        ii.  There is not clear floor space that is at least 48 inches long x 30 inches wide provided

adjacent to the 36-inch minimum length of counter;

**B.** The existing counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **iii.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36

inches above the finished floor positioned for a forward approach;

C. There is no ADA accessible portion of the counter that extends the same depth as the non-accessible portion of the counter;

D. There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

E. The credit card payment terminal is located on a non-accessible portion of the existing counter which prohibits individuals with disabilities from being afforded the opportunity to independently transact business in the same manner as non-disabled individuals;

F. Palace Casino to maintain the accessible features at the check-in counter that are required to be readily accessible to and usable by individuals with disabilities;

**ggg.** Palace Casino provides stairs to the main lobby area for able-bodied individuals but fails to provide an ADA accessible stairs to the main lobby area for non-able-bodied individuals which affords individuals with disabilities the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals without disabilities which includes but is not limited to the following failures by Defendant:

**ii.** Palace Casino fails to provide a stairway with closed risers which prohibits individuals with disabilities from the full and equal opportunity to access the lobby area using the stairs;

## "PURE" SPA

**hhh.** Palace Casino provides sales/service counters at the Spa for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following elements:

A.  The sales/service counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

    i.  There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    ii.  There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

B.  The existing sales/service counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    i.  There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

ii.   There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

iii.   There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

C.   There is no ADA accessible portion of the sales/service counter that extends the same depth as the non-accessible portion of the sales/service counter;

D.   There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

E.  Palace Casino "Pure" Spa fails to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

iii.  Palace Casino provides seating in the Spa area for able-bodied individuals to sit and relax while they wait for their spa experience, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following elements:

   i.  There is not at least five percent (5%) ADA accessible seating;

   ii.  The seating fails to meet the required height of 17-19 inches above the finished floor;

   iii.  There is no ADA accessible seating that conforms to the standards for accessible design in all of the elements that are required to be readily accessible to and usable by individuals with disabilities;

## POOL AREA

jjj. Palace Casino provides a swimming pool for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit;

   i. Palace Casino fails to provide at least two accessible means of entry for an individual with a disability to be afforded the opportunity to get into the pool;

   ii. The pool fails to provide a lift which prevents a wheelchair dependent individuals from accessing the pool;

   iii. Palace Casino fails to provide 30x48 inches of required clear floor or ground space for a disabled individual to approach the accessible seating by the pool;

kkk. Palace Casino fails to provide an accessible route to the cabana seating area around the pool;

**III.** Palace Casino provides a Hot Tub for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit, including but not limited to the following elements:

     **i.** Palace Casino fails to provide at least one accessible means of entry for an individual with a disability to be afforded the opportunity to get into the pool;

     **ii.** The hot tub fails to provide a lift or other mean of entry which prevents a wheelchair dependent individuals from accessing the pool;

     **iii.** There is no accessible route leading up to the hot tub which denies individuals with disabilities the opportunity to experience the outdoor spa;

     **iv.** Palace Casino fails to provide 30x48 inches of required clear floor or ground space for a disabled individual to approach the accessible seating by the pool;

## BUFFET AREA

mmm.   Palace Casino provides a food selection counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following elements:

    A. The service counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

        i. There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

        ii. There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing service counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **iii.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

C. There is no ADA accessible portion of the service counter that extends the same depth as the non-accessible portion of the check-out counter;

D. Palace Casino fails to maintain the accessible features at the service counter that are required to be readily accessible to and usable by individuals with disabilities;

nnn. Palace Casino provides a self-servicing condiment counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the same experience afforded to individuals without disabilities, including but not limited to the following elements:

A. The self-servicing condiment counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

   **i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

   **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The self-servicing counters fail to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counters;

   **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

   **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a

maximum of 36 inches above the finished floor positioned for a forward approach;

iii. There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

C. The condiment items on the counters are arranged so that individuals with disabilities cannot fully an independently access the items;

D. Palace Casino current practice on maintaining the condiment items stocked for customers segregates individuals with disabilities to an inferior benefit because disabled individuals require assistance to retrieve items maintained on the counters;

E. Palace Casino fails to maintain the accessible features at the self-servicing condiment counters that are

required to be readily accessible to and usable by individuals with disabilities;

**ooo.** Palace Casino provides several different style seating options for able bodied individuals to sit and dine while at the bistro, but fails to provide that same level of service to individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit of the dining area.

## CONTACT LOUNGE & SPORTS BAR

**ppp.** Palace Casino provides several types of seating for able-bodied individuals in the Contact Lounge & Sports Bar, but fails to provide that same level of service to individuals without disabilities, which segregates and relegates individuals with disabilities to an inferior benefit of Palace Casino's Contact Lounge & Sports Bar;

**qqq.** Palace Casino Contact Lounge & Sports Bar provides a bar for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, including but not limited to the following elements:

vi. The top surface of the bar exceeds the maximum allowed height of 34 inches above the finished floor;

vii. The bar fails to provide at least five percent (5%) ADA accessible seating;

viii. The bar counter fails to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

ix. The bar counter fails to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

x. Palace Casino fails to maintain the accessible features at Contact Lounge & Sports Bar;

rrr. Palace Casino provides dining tables in Contact Lounge & Sports Bar for able-bodied individuals to sit and enjoy their food and drinks, but fails to provide the same level of goods and services to disabled individuals, which includes but is not limited to the following elements:

    **i.** There are no ADA accessible dining tables provided 28 inches minimum and 34 inches maximum above the finished floor that allow for the proper knee clearance;

    **ii.** There are no ADA accessible dining tables provided 28 inches minimum and 34 inches maximum above the finished floor that allow for the proper toe clearance;

    **iii.** The dining tables fail to have the required 5% ADA accessible seating and be evenly disbursed throughout the seating area;

    **iv.** There are no dining tables that provide the required 30x48 inches of clear floor or ground space for a forward approach;

    **v.** Palace Casino fails to maintain the accessible features at the dining tables in Contact Lounge & Sports Bar;

**sss.** Palace Casino provides high-top tables in the bar area for able-bodied individuals to sit and enjoy their food and drinks, but fails to provide the same level of goods and services to disabled individuals, which includes but is not limited to the following failures by Defendant:

    **i.** There is no ADA accessible high-top table provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the proper knee clearance;

    **ii.** There is no ADA accessible high-top table provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the proper toe clearance;

    **iii.** The high-top tables fail to provide at least 5% ADA accessible seating;

    **iv.** The high-top tables fail to provide the required 30x48 inches of clear floor or ground space for a forward approach;

    **v.** Palace Casino fails to maintain the accessible features at the high-top tables;

**ttt.** Palace Casino Resort provides a lounge area in Contact Lounge & Sports Bar for able-bodied individuals to sit and relax while socializing, but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that

experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit;

uuu.   Palace Casino Resort provides seating in the lounge area of Contact Lounge & Sports Bar for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following elements:

   i. There is not at least five percent (5%) ADA accessible seating;

   ii. There is no ADA accessible lounge seating that conforms to the standards for accessible design in all of the elements that are required to be readily accessible to and usable by individuals with disabilities;

   iii. There is not 36 inches of clear floor or ground space around the lounge area seating for a wheelchair user to be able to approach and transfer onto the seating;

iv. The current practice at Palace Casino Resort is to position and other arrange the lounge seating in a way that prohibits disabled individuals from being afforded the opportunity to use the lounge area;

vvv. Palace Casino Resort provides tables in the lounge area of Contact Lounge & Sports Bar for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following elements:

i. The tables do not measure 28-34 inches above the finished floor;

ii. The tables fail to provide the required knee clearance;

iii. The tables fail to provide the required toe clearance;

iv. The tables obstruct the required 36 inches of clear floor or ground space for a wheelchair user to approach and transfer onto the lounge area seating;

v. The current practice at Palace Casino Resort is to locate the lounge tables within the required 36 inches of clear floor or ground space so that disabled individuals cannot approach or transfer onto the lounge area seating;

vi. Palace Casino Resort fails to maintain the accessible features of the lounge area that are required to be readily accessible to and usable by individuals with disabilities;

qqq. Palace Casino Resort provides tables on the outside patio area of Contact Lounge & Sports Bar for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following elements:

i. There are no ADA accessible outdoor patio tables provided 28 inches minimum and 34 inches maximum

above the finished floor that allow for the proper knee clearance;

ii. There are no ADA accessible outdoor patio tables provided 28 inches minimum and 34 inches maximum above the finished floor that allow for the proper toe clearance;

iii. The outdoor patio tables fail to have the required 5% ADA accessible seating and be evenly disbursed throughout the seating area;

iv. There are no outdoor patio tables that provide the required 30x48 inches of clear floor or ground space for a forward approach;

v. Palace Casino fails to maintain the accessible features at the outdoor patio tables in Contact Lounge & Sports Bar;

rrr. Palace Casino Resort provides an outdoor patio area at Contact Lounge & Sports Bar for able-bodied individuals to enjoy their food and drinks and socialize, but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from,

a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit;

28. To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

29. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. §12205.

30. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiffs' injunctive relief, including an Order to alter the discriminating facility to make it readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, and closing the facility until the requisite modifications are completed, and to further order the Defendants to modify their policies, practices, and procedures, to make reasonable accommodations to individuals with disabilities.

COUNT TWO
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
### 42 U.S.C. § 12182(b)(2)(A)(ii)
*(Practices, procedures, and policies denying equal benefits)*

## ADA Title III Prohibits Other Discrimination in Addition to Architectural Barriers

31. Plaintiffs re-allege paragraphs 1-30 above.

32. The ADA, Title III, provides a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. § 12182(a)(1) (emphasis added).

33. The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A))(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other words, the disabled must receive equal benefits as the nondisabled. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends,

also recognizes that persons who use wheelchairs and mobility aids historically have been provided "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens."  <u>See</u> 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

34. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5).

35. To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services,

facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

36. By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities *more than simple physical access*. Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

**37.** For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit explained this clear statutory mandate in *Rendon v. Valleycrest Prod., Ltd.* 294 F.3d 1279, (11th Cir. 2002):

> *"A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both tangible barriers (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and intangible barriers (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges."*

## **Defendant's Failed Practices and Lack of Policies Are Discriminatory**

**38.** Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> *"a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations."*

**39.** Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to the disabled.

**40.** As detailed below, Defendant has failed to make reasonable modifications in its policies, practices, and procedures that are necessary to afford their goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendant denied services, segregated or otherwise treated Plaintiffs differently than other individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendant has discriminated against Plaintiffs.

Defendant will continue that discrimination forever until enjoined as Plaintiffs request. The discrimination is described more particularly in the following paragraphs.

41. Defendant either has no policies, practices, and procedures to remove architectural barriers or else it does not abide by them. The rampant architectural barriers previously identified in Count One establish that Defendant has failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

42. Defendant's use of its facilities, and its practices at the facilities, literally creates barriers and in so doing denies the Plaintiffs the full and equal enjoyment of the facilities. Those practices include:

   a) Defendants fail to provide ADA accessible parking with connecting accessible routes to the establishment from its parking structures, which means that Plaintiffs are forced to depend on assistance from a third party to get into Palace, whereas non-disabled conveniently access the establishment from the parking structures;

**b)** Defendant make its elevators inaccessible for use by the disabled by failing to maintain any ADA accessible elements within the elevators so that Plaintiffs are afforded the opportunity to independently use the elevator, whereas non-disabled individuals are able to independently use the elevators;

**c)** Defendant makes its players club cards and its associated benefits inaccessible for use by the disabled, which means that that Plaintiffs are required to seek assistance to use the players card at the casino games or otherwise be outright excluded from the benefits of the players club, whereas non-disabled individuals do not need to seek assistance to use the players club cards at the games so that they enjoy earning rewards that convert to slot credits, earning benefits at the players tables, earning valuable "comp" dollars that can be redeemed at the restaurants, receive monthly deals for the Palace Casino & Resort in the mail, among other benefits.

**d)** Defendant makes sales/service counters throughout its establishment inaccessible for use by the handicapped by

failing to provide either a parallel or a forward approach to the counters with the required clear counter surface, which means Plaintiffs cannot fully and equally use the sales/service counters to transact business throughout Palace Casino Resort in the same way the non-disabled do, because the non-disabled have counters they can use independently to check-in to their rooms, check-out, and order food and drink items;

e) Point of sale machines at the check-out counters throughout the establishment are located so as to be inaccessible, which denies Plaintiffs the ability to equally use those machines as the non-disabled, who can independently use the point of sale machines to pay for their purchases, though Plaintiffs cannot;

f) Defendant fails to provide maneuvering clearance and clear floor space in almost every way possible so that Plaintiffs cannot travel and move throughout the establishment on the same paths of travel that the non-disabled people use;

g) Defendants make its toilet facilities inaccessible for use by the disabled by failing to maintain any ADA accessible elements within the restrooms so that Plaintiffs are afforded the

opportunity to independently use the restroom, or clean up, or move into and throughout the restroom, whereas non-disabled individuals are able to independently use the restrooms;

h) Defendants makes its pool area inaccessible for use by the disabled by failing to maintain any ADA accessible features whatsoever, so that Plaintiffs are completely excluded from being able to lounge in the chairs, swim in the pool, sit at the hot tub, among other services in the pool area, whereas non-disabled individuals are able to independently enjoy and use the pool area to swim, lounge in the chairs, sit in the hot tub, and use the cabanas;

i) Defendant fails to provide a place for the disabled both to sit and eat like able-bodied people can;

j) Defendants makes its casino games inaccessible for use by the disabled by failing to maintain the ADA accessible features whatsoever so that Plaintiffs are excluded from being able to approach the games, whereas, non-disabled individuals are able to independently use all the casino games;

k) Defendants fail to provide accessible cashier counters to the disabled which means Plaintiffs cannot fully and equally use the counters to transact business in the same way the non-disabled do, because the non-disabled have counters they can use independently;

l) Defendants fail to provide an accessible snack bar counter at the bakery which prohibits the disabled from being able to order and pick up food and drinks, whereas non-disabled individuals are independently able to view and select the bakery items and independently retrieve items from the counters;

m) Defendants fail to provide an accessible fitness center to disabled individuals, which means Plaintiffs cannot fully and equally use the fitness center in the same way the non-disabled do, because the non-disabled have a fitness center they can use independently;

n) Defendants fail to provide an accessible service counter for disabled individuals in the pure spa; which means Plaintiffs cannot fully and equally use the counters to transact business

in the same way the non-disabled do, because the non-disabled have counters they can use independently;

o) Defendants failed to provide hotel suites to disabled individuals, which means Plaintiffs are forced to be segregated to inferior services and rooms, whereas non-disabled are able to reserve the hotel suites and enjoy the luxury features of the suite;

p) Defendants failed to provide hotel deluxe rooms with an ocean view to disabled individuals, which means Plaintiffs cannot stay and enjoy the ocean view from their hotel room the way non-disabled individuals can;

q) Defendants failed to provide an accessible reservation system for disabled individuals, which means that Plaintiffs are segregated, separated and otherwise screened out from being able to reserve a hotel room, whereas non-disabled individuals are able to make reservations;

r) Defendants failed to provide a description of the accessible features of the resort for disabled individuals, which means Plaintiffs cannot fully and equally evaluate the features of the

Palace Casino Hotel in the same way the non-disabled do, because the non-disabled are able to independently use the website to evaluate the features of the hotel;

s) Defendants failed to provide a description of the accessible features of the resort guest rooms for disabled individuals;

t) Defendants failed to provide a policy to guarantee rooms that disabled individuals reserve;

u) Defendant's policies, practices, and procedures are conducted without regard to disabled individuals;

v) Defendants practice is to only make modifications to practices and policies and repairs to barriers upon the demand of the disabled.

43. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, or procedures, or else they have failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

44. As the continuing architectural barriers and the failure to provide full and equal use of the facilities establishes, Defendant's existing,

practice is both in effect and/or explicitly to remediate ADA Title III architectural barriers only upon demand by the disabled.

45. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, and procedures or else it failed to create, implement and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at their casino and resort as individuals without disabilities, 42 U.S.C. 12182(b)(1)(A), and in particular the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of Palace Casino Resort.

46. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

47. To date, the Defendant's discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

**48.** A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. The Plaintiffs hereby demand that Defendant both create and adopt a corporate practice and policy that Defendant (1) will fully comply with Title III, ADA, and all its implementing regulations so that physical and non-physical barriers identified above are permanently removed from Defendant's casino and resort consistent with the ADA; (2) Defendant will provide the disabled, including those with mobility limitations full and equal use and enjoyment of Palace Casino Resort; (3) Palace Casino Resort will remedy its practice of making ADA Title III remediations only upon demand by the disabled (4) Palace Casino Resort will remedy its practice of screening out disabled individuals through the use of its reservation system; (5) Palace Casino Resort will remedy its practice of screening out disabled individuals through the use of its phone reservation system; (6) Palace Casino Resort will remedy its practice of not guaranteeing Plaintiffs and others similar situated the accessible room they requested;

**49.** As pled above, New Palace Casino LLC, "owns" the real property and its improvements at 158 Howard Avenue, Biloxi, Mississippi, 39530 42 U.S.C. § 12182, and "operates" the establishment located at 158 Howard Avenue, Biloxi, Mississippi, 39530., more commonly known has Palace Casino Resort. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, and further, providing auxiliary aids and services to its web based services, as alleged above. New Palace Casino, LLC, is also the "owner" of the public internet website palacecasinoresort.com and "operates" the world-wide websites services that are available to the public at Palace Casino Resort. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, and further, providing auxiliary aids and services to its web based services, as alleged above. 42 U.S.C. § 12182.

**50.** The ADA is over twenty-five (25) years old. Defendant knows it must comply with the ADA Title III. The ADA Title III requires modifications in policies, practices, and procedures to comply with it,

as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

51. By this Complaint, Plaintiffs provide sufficient notice of their demands for an alteration in Defendant's policies, practices, and procedures.

52. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

53. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

## COUNT THREE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### *Denial of Full and Equal Enjoyment*

54. Plaintiffs re-allege paragraphs 1-53 above.

55. 42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."*

56. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

57. Congress also found that: "*individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities,* 42 U.S.C. § 12101(a)(5); "*the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;*" 42 U.S.C. § 12101(a)(7). Congress even found that: "*the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.*" 42

U.S.C. § 12101(a)(8).

58. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

59. The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

60. The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

61. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of

discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendant's acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, et seq., and the regulations promulgated thereunder.

62. To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination*" including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.* 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major

areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

63. For that reason, the Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' *full and equal enjoyment* of the privileges and *services* offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

64. The keystone for this analysis is Defendant *must start by considering how its facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience. Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005) See also, *Baughman v. Walt Disney World Company*, 685 F.3D 1131, 1135 (9th Cir. 2012).

65. Plaintiffs Patrick Dunn and Hope Elly were denied full and equal access to Palace Casino Resort. Plaintiffs specifically and definitely want to return to the Defendant's casino, resort and spa to enjoy the renowned smoke-free atmosphere, luxurious accommodations, award winning restaurants, top-of-the-line gaming, superior guest services, newly renovated hotel rooms and suites with stunning views, and endless excitement. More specifically, Plaintiffs want to be afforded the same level of service that is offered to non-disabled individuals and which Defendant has failed to provide to Plaintiffs as follows: Defendant failed to provide an accessible parking structure and accessible route into Palace Casino Resort for disabled individuals, which means Plaintiffs cannot park, cannot independently get out of their cars and onto their wheelchairs, cannot independently travel from the parking garage into the casino, resort and spa, cannot determine if there is a usable parking space, and must determine by trial and error how they are to park and move into the casino, resort and spa; Defendant failed to provide Plaintiffs the same opportunity to participate and enjoy the benefits in the players club including but not limited to earning rewards that convert to slot

credits, earning benefits at the players tables, earning valuable "comp" dollars that can be redeemed at the restaurants, receive monthly deals for the Palace Casino & Resort in the mail, among other benefits of the players club; Defendant failed to provide Plaintiffs that same experience that non-disabled individuals have when at Palace Casino Resort; Defendant failed to provide Plaintiffs and other disabled individuals accessible elevators to get from the parking structure inside the casino, resort and spa, although the able-bodied could independently use the elevators; Defendant failed to provide the same experience by making it nearly impossible for the disabled to access the check-in counter, while the non-disabled can independently access the counter and services provided at the counter; Defendant failed to provide the same experience to Plaintiffs by making it nearly impossible for the disabled to access the seating and counter in the concierge area, all of which the able-bodied can fully access; Defendant failed to provide an accessible route to and throughout the gift shop for disabled individuals, which means that unlike the non-disabled, the disabled must struggle to get throughout the gift shop independently, if they can make it at all; Defendant

failed to provide Plaintiffs that same experience that non-disabled individuals have when shopping at the Palace Casino Resort gift shop; Defendant failed to provide the same experience by making it nearly impossible for the disabled to access the sales/service counter in the gift shop, while the non-disabled can independently access the counter and services provided at the counter; Defendant failed to provide Plaintiffs that same experience that non-disabled individuals have when visiting Palace Casino Resort's Pure Spa; Defendant failed to provide the same experience by making it nearly impossible for the disabled to access the sales/service counter in Pure Spa, while the non-disabled can independently access the counter and services provided at the counter; Defendant failed to provide the same experience by failing to provide lounge seating in Pure Spa for the disabled to sit and relax while waiting on their spa experience, while the non-disabled can fully use the lounge seating; Defendant failed to provide Plaintiffs that same experience by failing to provide an accessible fitness center for the disabled, while the non-disabled can fully access the fitness center; Defendant failed to provide accessible restrooms throughout Palace Casino Resort for disabled individuals,

which means that, unlike the able-bodied, the disabled are challenged or denied the opportunity to independently use the restrooms, clean up after using the restrooms, move throughout the restrooms, and use the other elements of the restrooms; Defendant failed to maintain the accessible signage throughout Palace Casino Resort so that the disabled, unlike the non-disabled, do not even know what route and what facilities are usable by individuals with disabilities; Defendant's failure to identify by signage what is accessible and what is not accessible makes the disabled inferior, segregated or otherwise treated differently, because unlike the non-disabled, disabled individuals have to guess and speculate and determine by trial and error what facilities can even be used by them; Defendant failed to provide the same experience by making it nearly impossible for the disabled to access the sales/service counters throughout the casino, resort and spa, though the able-bodied can fully use and enjoy all the sales/service counters throughout Palace Casino Resort; Defendant failed to provide Plaintiffs and other disabled individuals the same opportunity to use point of sale machines to pay for their purchases; Defendant failed to provide Plaintiffs that same experience as non-

disabled individuals by making it nearly impossible for the disabled to order and pay for food and drinks at Palace Café and Bakery; Defendant failed to provide Plaintiffs that same experience that non-disabled individuals have when eating and ordering food at Mignon's, CONTACT Lounge & Sports Bar, Palace Buffet, and other restaurants and bars throughout Palace Casino Resort; Defendant failed to provide Plaintiffs that same experience when eating at Palace Buffet by making it nearly impossible for the disabled to access the food selection counters, although the non-disabled can access the food selection counters independently; Defendant failed to provide Plaintiffs that same experience that non-disabled individuals have when dining at the restaurants and bars throughout Palace Casino Resort by failing to provide access to dining tables and seating, which the non-disabled are able to access freely; Defendant failed to provide the disabled seating and access to the bar in the Mignon Lounge, which the able-bodied are able to access freely; Defendant failed to provide the disabled lounge seating and tables in the Mignon Lounge, which the able-bodied are provided; Defendant failed to provide the disabled seating and access to the bar in

CONTACT Lounge & Sports bar, which the able-bodied are able to access freely; Defendant failed to provide the disabled lounge seating and tables in the CONTACT Lounge & Sports Bar lounge, which the able-bodied are provided; Defendant failed to provide the disabled the same experience the non-disabled have by making it nearly impossible for the disabled to access the outdoor patio area at CONACT Lounge & Sports Bar while the able-bodied are able to use the outdoor patio freely at will; Defendant failed to provide Plaintiffs that same experience that non-disabled individuals have when playing games in the casino by failing to provide the required clear floor or ground space; Defendant failed to provide Plaintiffs that same experience that non-disabled individuals have when at the pool area; Defendant failed to provide Plaintiffs that same online experience non-disabled individuals have which includes making reservations on the online website; Defendant failed to provide accessible suites including but not limited to water view rooms, Deluxe rooms with a jetted tub, and all of the suites; Defendant failed to provide Plaintiffs the same experience of making reservations through the phone system; Defendant failed to maintain the

accessible features of Palace Casino Resort that are required to be readily accessible to and usable by Plaintiffs and others similarly situated, such as maintaining the parking structure and restrooms; and all the foregoing failures by Defendant inhibited Plaintiffs from having the same experience that non-disabled individuals have when at Palace Casino Resort.

66. In its Preamble to the title III regulation, the Department of Justice recognized that mobility impaired persons including persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

67. The ADA specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A))(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). Further, 28 C.F.R. § 302(b) require that goods, services, and accommodations be

provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided "inferior seating" and "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

68. Thus, Defendant's "use" of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendant has segregated and separated the disabled from the non- disabled individuals. *"The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected." H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473.* The ADA provides a "broad mandate" to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream American life. *PGA Tour, Inc. v.*

*Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*)

69. Defendant discriminated against Plaintiffs by denying Plaintiffs "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facility during each visit. Each incident of deterrence denied Plaintiffs an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Palace Casino Resort.

70. Defendant's conduct and Defendant's unequal treatment to Plaintiffs constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendant will continue to treat Plaintiffs and others similarly situated unequally.

71. Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitute continuous discrimination and absent a Court ordered injunction, Defendant will continue to not maintain the required accessible features at Defendant's facility. 28 C.F.R.§ 36.211(a).

72. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

73. Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendant.

**COUNT FOUR**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12182(a) and 28 C.F.R. § 36.302 (e)(1)(i)-(ii)**
*(Failure of website to show accessible features of the Palace Casino Resort)*

74. Plaintiffs re-allege paragraphs 1-73 above.

75. The ADA's legislative history provides that integration is fundamental to the purposes of the ADA. Provision of segregated accommodations, goods and services relegate persons with disabilities to be an inferior second-class citizen. *H. Rep. 101–485(III), 101st Cong., *1279 2d Sess., at 56, reprinted in 1990 U.S.C.C.A.N. 445, 479. "The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected." Id. at 50, 1990 U.S.C.C.A.N. at 473.*

76. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5).

77. However, the Internet of today did not exist when Congress originally enacted the ADA and, accordingly, neither the ADA nor the regulations the Department of Justice promulgated under the ADA specifically addresses access to Web sites. *But the statute's broad and expansive nondiscrimination mandate reaches goods and services provided by covered entities on Web sites over the Internet."* 75 Fed Reg. 43,460, 46,463 See also *Netflix,* 869 F. Supp. 2d at 200 *(excluding web-based services would "run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other*

*members of the general public."* Carparts Distribution Center, Inc. v.
*Automotive Wholesaler's Association of New England, Inc.,* 37 F.3d 12, 20
(1st Cir. 1994)).

78. Congress expressly stated when enacting the ADA that: "...*the types
of accommodation and services provided to individuals with disabilities,
under all of the titles of this bill, should keep pace with the rapidly changing
technology of the times*". In light of this, the United States Department
of Justice issued an Advanced Notice of Proposed Rulemaking
("ANPRM") on Accessibility of Web Information and Services of
State and Local Government Entities and Public Accommodations.
75 Fed Reg. 43460.  The Department of Justice explained in the
ANPRM that although the Department has been clear that the ADA
applies to websites of public accommodations, inconsistent court
decisions, differing standards for determining web accessibility, and
repeated calls for Department action warranted further guidance. *Id.*
at 43464.  Through the ANPRM, the Department sought to explore
what regulatory provisions they could propose *to make clear to entities
covered by the ADA of their obligations to make their websites accessible.*

79. To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

80. By its clear text, Title III requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination"* including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.* 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of

programs and activities conducted by the public accommodation.").

81. For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182, 28 C.F.R. 36.302(e)(1)(i) and (ii). Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held persuasively in *Rendon v. Valleycrest Prod., Ltd.* 294 F.3d 1279, (11th Cir. 2002) that:

> " *A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both tangible barriers (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and intangible barriers (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges."*

82. The Palace Casino Resort website and online reservation system did not allow plaintiffs to use the website and online reservation system in the same manner as individuals with disabilities, because the website and online reservation system failed to show any of the accessible features of Palace Casino Resort, which includes but is not limited to: Defendant failing to identify and describe the accessible features of (1) the Casino, (2) the Resort's common areas and its associated amenities; (3) Mignon's Steaks & Seafood; (4) Palace Buffet; (5) Palace Cafe & Bakery; (6) Wahoo's Poolside Bar; (7) Stacked Grill; (8) Mignon's Lounge; (9) CONTACT Lounge & Sports Bar; (10) Pure Spa; (11) the pool; (12) fitness center; (13) bicycle rentals (14) the gift shop; (15) the marina; and (16) the accessible features of the guest rooms themselves, much less provide them options for accessible features. Moreover, Defendant provides a plethora of services which includes but is not limited to: hotel stay packages, a virtual smoke free tour of its Casino Resort and Spa, players club and its associated benefits and services to able-bodied individuals, but fail to provide those same services of the accessible features of the Palace Casino Resort to disabled individuals which

relegates and otherwise segregates disabled individuals to inferior benefits and services of the Palace Casino Resort.

83. The Department of Justice has promulgated regulations that specifically prohibit Defendant's conduct in this case as to the Defendant's places of lodging. 28 C.F.R. 36.302(e) specifically provides:

> "(1) *Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party –*
>
> > *(i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and <u>in the same manner as</u> individuals who do not need accessible rooms;*
> >
> > *(ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;"* (emphasis added).

84. Defendant's website and reservation system did not allow Plaintiffs to use the system in the same manner as individuals without disabilities, because (1) the website failed to show or otherwise inform of the accessibility features at the hotel; (2) it did not offer the same type of guest rooms to the disabled as to individuals without disabilities; and (3) it failed to allow Plaintiff's and other similar situated, to make reservations in the same manner as other individuals who do not need accessibility features. Specifically, through the reservation system Defendant only offers the disabled hotel rooms that are allegedly accessible that are standard guests rooms, without any of the choices for upgraded amenities that are offered in the non-accessible rooms. The choices for upgraded amenities include but are not limited to the floor level, rooms that are adjoining, the different types of suites and rooms, a view of the water, room size, the type of amenities offered in the room, among many other features non-disabled guests are offered, including the floor level and suites.

85. The Defendant's reservation system did not allow Plaintiffs to make reservations in the same manner as the non-disabled because it failed

to provide accessible opportunities to make reservations for the rooms that Palace Casino Resort offers such as 1) A Deluxe King bed room; (2) A Deluxe two Queen bed room; (3) A King bed Deluxe with a jetted tub room; (4) A Queen bed Deluxe with a jetted tub room; (5) A Standard King bed room; (6) A Standard Double Queen bed room; (7) A Deluxe King bed room with a view; (8) A King bed room with a view; (9) A View 2 Queen room; (10) A View King Deluxe w/jetted room; (11) A deluxe Queen bed room with a jetted tub and a view; (12) the hotel room suites room.

86. To date, the Defendant's discriminating actions continue.

87. As pled above, New Palace Casino LLC, "owns" the real property and its improvements at 158 Howard Avenue, Biloxi, Mississippi, 39530 42 U.S.C. § 12182, and "operates" the establishment located at 158 Howard Avenue, Biloxi, Mississippi, 39530., more commonly known as Palace Casino Resort. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, and further, providing auxiliary aids and services to its web based services, as alleged above. New Palace Casino, LLC, is also the "owner" of the public internet

website palacecasinoresort.com and "operates" the world-wide websites services that are available to the public at Palace Casino Resort. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, and further, providing auxiliary aids and services to its web based services, as alleged above. 42 U.S.C. § 12182.

88. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

89. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendant.

## COUNT FIVE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12182(b)(2)(A)(i)
*(Use of technology that tends to screen out individuals with disabilities)*

90. Plaintiffs re-allege paragraphs 1-89 above.

91. The ADA's legislative history provides that integration is fundamental to the purposes of the ADA. Provision of segregated accommodations, goods and services relegate persons with disabilities to be an inferior second-class citizen. *H. Rep. 101–485(III), 101st Cong., \*1279 2d Sess., at 56, reprinted in 1990 U.S.C.C.A.N. 445, 479.* "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected.*" *Id. at 50, 1990 U.S.C.C.A.N. at 473.*

92. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to

lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5).

93. However, the Internet today did not exist when Congress originally enacted the ADA and, accordingly, neither the ADA nor the regulations the Department of Justice promulgated under the ADA specifically addresses access to Web sites. *But the statute's broad and expansive nondiscrimination mandate reaches goods and services provided by covered entities on Web sites over the Internet."* 75 Fed Reg. 43,460, 46,463 See also *Netflix,* 869 F. Supp. 2d at 200 *(excluding web-based services would "run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages available indiscriminately to other members of the general public." Carparts Distribution Center, Inc. v. Automotive Wholesaler's Association of New England, Inc.,* 37 F.3d 12, 20 (1st Cir. 1994)).

94. Congress expressly stated when enacting the ADA that: "...*the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times"*. In light of this, the United States Department

of Justice issued an Advanced Notice of Proposed Rulemaking ("ANPRM") on Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations. 75 Fed Reg. 43460.   The Department of Justice explained in the ANPRM that although the Department has been clear that the ADA applies to websites of public accommodations, inconsistent court decisions, differing standards for determining web accessibility, and repeated calls for Department action warranted further guidance. *Id.* at 43464.  Through the ANPRM, the Department sought to explore what regulatory provisions they could propose *to make clear to entities covered by the ADA of their obligations to make their websites accessible.*

95. To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

96. By its clear text, Title III requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination*" including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities*. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

97. For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy,

practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in *Rendon v. Valleycrest Prod., Ltd.* 294 F.3d 1279, (11th Cir. 2002) that:

> " *A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both* <u>*tangible barriers*</u> *(emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and* <u>*intangible barriers*</u> *(emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges.*

**98.** Pursuant to 42 U.S.C. § 12182(b)(2)(A)(i) discrimination includes:

> *The imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered.*

99.   Pursuant to 42 U.S.C. § 12182(b)(2)(A)(iii) discrimination includes:

> *A failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.*

100. The plain language of these statutory provisions applies to discrimination in offering the goods and services "of" a place of public accommodation or the services, programs, and activities "of" a public entity, rather than being limited to those goods and services provided "at" or "in" a place of public accommodation or facility of a public entity.

101. A place of public accommodation also may not refuse to make reasonable modifications to a policy or practice that has the consequence of denying such individuals access to its services. Nor can a public accommodation refuse to make modifications to a policy or practice that tends to deny individuals with disabilities access to the goods and services of the public accommodation.

102. Defendant utilizes the Palace Casino Resort online website and reservation system to screen out disabled individuals, so that they are not informed of the accessibility features at the hotel as well as not offered the same type of guest rooms as other individuals without disabilities. The screening out process specifically involves only offering hotel rooms that are allegedly accessible that are standard guests rooms without any upgraded amenities that are offered in the non-accessible rooms. The upgraded amenities include but are not limited to the floor level, rooms that are adjoining, the different types of suites and rooms, a view of the water, room size, the type of amenities offered in the room, among many other features non-disabled guests are offered, including the floor level and suites.

103. The Palace Casino Resort online website served to screen Plaintiffs in that they were unable to determine any of the accessible features of Palace Casino Resort, which includes but is not limited to: Defendant failing to identify and describe the accessible features of (1) the Casino, (2) the Resort's common areas and its associated amenities; (3) Mignon's Steaks & Seafood; (4) Palace Buffet; (5) Palace Cafe & Bakery; (6) Wahoo's Poolside Bar; (7) Stacked Grill;

(8) Mignon's Lounge; (9) CONTACT Lounge & Sports Bar; (10) Pure Spa; (11) the pool; (12) fitness center; (13) bicycle rentals (14) the gift shop; (15) the marina; and (16) the accessible features of the guest rooms themselves, much less provide them options for accessible features. Moreover, Defendant provides a virtual tour of Palace Casino Resort to able-bodied individuals, but fails to make a virtual tour available of the accessible features of Palace Casino Resort to disabled individuals.

104. The reservation system served to screen Plaintiffs to only allow them to book non-accessible guest rooms on the website, or alternatively, require Plaintiffs to make a request for accessible rooms after they made reservations for a non-accessible room.   The Defendant's reservation system did not offer Plaintiffs any of the types of rooms that Palace Hotel Casino offers such as (1) A Deluxe King bed room; (2) A Deluxe two Queen bed room; (3) A King bed Deluxe with a jetted tub room; (4) A Queen bed Deluxe with a jetted tub room; (5) A Standard King bed room; (6) A Standard Double Queen bed room; (7) A Deluxe King bed room with a view; (8) A King bed room with a view; (9) A View 2 Queen room; (10) A View King Deluxe w/jetted

room; (11) A deluxe Queen bed room with a jetted tub and a view; (12) the hotel room suites room;

105. Moreover, Defendant's online website, its reservation system, and further exemplified by its non-compliant facility screened out Plaintiffs by failing to ensure that accessible guest rooms are held for Plaintiffs and further, failing to make reasonable modifications in its policies, practices, or procedures, so that Plaintiffs are not excluded, denied services, segregated or otherwise treated differently than other individuals without disabilities.

106. The ADA and the title III regulation, since their enactment and promulgation, have always required that public accommodations provide effective communication to persons with disabilities through the provision of auxiliary aids and services. A commercial transaction between a customer and a public accommodation requires communication between the two, and in this action, Defendant has chosen to use an online reservation system by which it communicates with able-bodied individuals to complete commercial transactions. Whereas, Defendant has chosen to use its reservation system and online website as a means by which to not communicate and transact

business with disabled individuals which is contrary to the broad mandate of the ADA which prohibits not only outright exclusion but also unnecessary differential treatment. See 42 U.S.C. §§ 12182(a), (b)(1)(A), (b)(2)(A)(iii). Congress expressly stated when passing the ADA, "…*the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times[,]" and that technological advances "may require public accommodations to provide auxiliary aids and services in the future which today would not be required because they would be held to impose undue burdens on such entities." See* H.R. Rep. No. 485, pt. 2, at 108 (1990).

107. These are precisely the sorts of claims Title III was intended to cover. The process for selecting an ADA accessible hotel room is no different than the implementation of eligibility criteria in other contexts that are clearly covered by the Act. For example, there is no question that the administration of admission testing by a private secondary school falls within the scope of Title III. See Section 12189; 28 C.F.R. 36.309. There would be little question that the ADA would apply, and would be violated, if Defendant screened guests as they

entered the Hotel Lobby, sending home guests on the grounds that they were deaf or physically disabled or suffered from diabetes or any other disability. See 28 C.F.R. Pt. 36 App. B, p. 640 (commentary to 28 C.F.R. 36.301) ("*It would violate this section to establish exclusive or segregative eligibility criteria that would bar, for example, all persons who are deaf from playing on a golf course or all individuals with cerebral palsy from attending a movie theater.*"). That disabled individuals are screened out by an automated hotel reservation system, rather than by an admission policy administered at the studio door is of no consequence under the statute.

108. Defendant's failure to modify this practice necessary to ensure Plaintiffs the full and equal enjoyment of the Palace Resort Casino has resulted in the complete exclusion from making reservations online and in the same manner as other individuals who do not have disabilities. See § 12182(b)(2)(A)(ii)-(iii).

109. The screening process violates the Americans with Disabilities Act by directly and intentionally screening out disabled individuals for the purpose of preventing the disabled from being afforded the full and equal enjoyment of the goods, services, facilities, privileges,

advantages, or accommodations, at Palace Hotel Casino. 42 U.S.C. § 12182(b)(2)(A)(i).

110. The screening of individuals with disabilities is not necessary to provide accommodations. because no accommodations are provided.

111. To date, the Defendant's discriminating actions continue.

112. As pled above, New Palace Casino LLC, "owns" the real property and its improvements at 158 Howard Avenue, Biloxi, Mississippi, 39530. 42 U.S.C. § 12182, and "operates" the establishment located at 158 Howard Avenue, Biloxi, Mississippi, 39530., more commonly known has Palace Casino Resort. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, and further, providing auxiliary aids and services to its web based services, as alleged above. New Palace Casino, LLC, is also the "owner" of the public internet website palacecasinoresort.com and "operates" the world-wide websites services that are available to the public at Palace Casino Resort. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, and further, providing auxiliary aids and

services to its web based services, as alleged above. 42 U.S.C. § 12182.

113. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

114. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendant.

**WHEREFORE**, premises considered, Patrick Dunn and Hope Elly demand judgment against the Defendant on Counts One through Five and request the following injunctive and declaratory relief:

1. That the Court declare that the property owned and business operated by the Defendant as well as all Defendant's illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2. That the Court enter an order enjoining the Defendant to alter the facility to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to

comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and its implementing regulations, as stated in Count One;

3.  That the Court enter an order, in accordance with Count Two, directing the Defendant to modify its policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendant to make its business practices consistent with ADA Title III in the future.

4.  That the Court enter an order directing the Defendant to provide Plaintiffs full and equal access both to the Palace Casino Resort experience and to the use of the Palace Casino Resort facilities, and further order Defendant to maintain the required accessible features at the Defendant's establishment so that Plaintiffs and others similarly situated are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

5.  That the Court enter an Order directing the Defendant to evaluate and neutralize its policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow them to undertake and complete corrective procedures;

6.   That the Court enter an order enjoining Defendant from using the reservation system to screen and defer to another location individuals with disabilities, as stated in Count Four.

7.   That the Court enter an order enjoining compliance with federal regulations and statutes as to the adequacy of the reservation system for individuals with disabilities, as stated in Count Five.

8.   That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiffs; and

9.   That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted, this the 29th Day of March, 2017.


/s/ _____
**BRADLEY D. MCADORY**
**BPR # MS-10545**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36116
334.819.4030 p
334.819.4032 f
BDM@ADA-Firm.com
*Attorney for the Plaintiffs*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this 29th day of March, 2017 to the following:

**NEW PALACE CASINO, LLC**
c/o Registered Agent
attn.: J. Henry Ros
2510 14th Street, Suite 1125 (39501)
P.O. Box 160
Gulfport, MS 39502-0160

/s/ _____

**BRADLEY D. MCADORY**
**BPR # MS-10545**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36116
334.819.4030 p
334.819.4032 f
BDM@ADA-Firm.com
*Attorney for the Plaintiffs*